IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 11 |
| DRYDEN ADVISORY GROUP, LLC, | : | |
|     Debtor | : | CASE NO. 1:15-BK-00545-MDF |
| | : | |
| DURHAM COMMERCIAL CAPITAL CORP. | : | |
| | : | |
|     Movant | : | |
|     v. | : | |
| | : | |
| DRYDEN ADVISORY GROUP, LLC, | : | |
|     Objecting Party | : | |

**OBJECTION OF DRYDEN ADVISORY GROUP, LLC TO
DURHAM COMMERCIAL CAPITAL CORP.'S MOTION FOR
RECONSIDERATION OF THIS COURT'S FEBRUARY 24, 2015 ORDER**

The Objection of Dryden Advisory Group, LLC ("Debtor" or "Dryden"), by and through its attorneys, to the Motion of Durham Commercial Capital Corp. ("Durham") for Reconsideration of this Court's February 24, 2015 Order (the "Motion for Reconsideration"), is as follows:

    **A. Background**

1. On February 13, 2015, the Debtor filed a Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §101, et seq. The Debtor continues to conduct its business and affairs as a debtor-in-possession in accordance with 11 U.S.C. §§1107 and 1108. At this time, no trustee, examiner or creditors' committee has been appointed in the Debtor's case.

2. On February 19, 2015, the Debtor filed a Motion for Expedited Hearing regarding its Motion for an Interim Order Authorizing the use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code and Granting Adequate Protection (the "Cash Collateral Motion").

1

Notice of the Motion for Expedited Hearing, as well as a copy of the Cash Collateral Motion was served upon Durham on February 19, 2015. *See* Docket Entry No. 13.

3. On February 19, 2015, this Court granted the Debtor's request for an expedited hearing on the Cash Collateral Motion and scheduled a hearing for February 25, 2015 at 9:30 a.m. (the "Preliminary Hearing"). *See* Docket Entry No. 16.

4. Notice of the Preliminary Hearing as well as additional copies of the Cash Collateral Motion were provided to Durham on February 20, 2015. *See* Docket Entry Nos.17, 18 and 19.

5. During the early afternoon of February 23, 2015, counsel for the Debtor contacted Durham and spoke with its agent, Timothy Mura, to learn Durham's position relative to the Cash Collateral Motion. Mr. Mura confirmed that Durham had received a copy of the Cash Collateral Motion and that Durham was aware of the Preliminary Hearing. However, Durham declined to advance any position regarding the Cash Collateral Motion at that time.

6. During the late afternoon of February 23, 2015, counsel for the Debtor again contacted Durham and spoke with Timothy Mura, in an effort to learn Durham's position regarding the Cash Collateral Motion.[1] Mr. Mura advised counsel for the Debtor that "someone would be in touch". Counsel for the Debtor then provided Mr. Mura with an after hours phone number and invited Durham, or its counsel, to contact him that evening or anytime prior to the Preliminary Hearing should they wish to discuss the Cash Collateral Motion.

7. To the best of Debtor's knowledge and information, Durham made no attempt to contact the Debtor prior to the Preliminary Hearing.

---

[1] Counsel for the Debtor advised Mr. Mura that it was the Debtor's position that Durham possessed a third priority lien again the Cash Collateral and that the value of the Cash Collateral was less than the aggregate value of all senior liens. As such, the Debtor did not intend to make any cash payments to Durham in exchange for the use of Cash Collateral. This position is also clearly stated in the Cash Collateral Motion.

2

8. On February 24, 2015, the Court conducted the Preliminary Hearing on the Debtor's Cash Collateral Motion. Durham did not appear at the hearing and did not file an objection the Cash Collateral Motion.

9. At the Preliminary Hearing, the Debtor advised the Court that it had spoken with representatives of Beneficial Bank, Citibank, and Durham and that an agreement had been reached with Beneficial for the entry of an Interim Order Authorizing the Use of Cash Collateral. The Court was further advised that Citibank did not oppose the entry of the Interim Order, and that Durham had not articulated any position regarding the Cash Collateral Motion.

10. During the Preliminary Hearing, Counsel for the Debtor also advised the Court that new language had been added to the Interim Order to address a concern resulting from pre petition correspondence sent by Durham to Dryden's account debtor's (the "Durham Collection Letters").[2] The Durham Collection Letters instructed each of Dryden's account debtor's to make payments directly to Durham, rather than to the Debtor. The new language was designed to remove any confusion on the part of Dryden's account debtors regarding how payments should be made.

11. On February 24, 2015, following the Preliminary Hearing, this Court entered an Order Authorizing the Debtor to Use Cash Collateral on an Interim Basis (the "Interim Order"). *See* Docket Entry No. 29.

12. On February 26, 2015, Durham filed a Motion for Expedited Consideration of its Motion for Reconsideration the Interim Order, which was granted by the Court. *See* Docket Entry Nos. 32 and 34.

---

[2] Since Durham had not filed an Objection to the Cash Collateral Motion or advised the Debtor of its position regarding same, counsel for the Debtor was unaware that Durham's position was different from the one set forth by the Debtor in its Cash Collateral Motion and articulated by Debtor's counsel to Mr. Mura by telephone on February 23, 2015.

3

Case 1:15-bk-00545-MDF    Doc 42    Filed 03/02/15    Entered 03/02/15 09:08:24    Desc
Main Document    Page 3 of 15

13. On February 27, 2015, Durham filed its Motion for Reconsideration of the Interim Order objecting to the Interim Order for the first time on grounds that it impacted accounts Durham claims to have purchased from the Debtor. *See* Docket Entry No. 37.

14. This Objection is filed in response to Durham's Motion for Reconsideration.

### B. Preliminary Statement

15. Durham received notice of the Cash Collateral Motion on at least two separate occasions and was aware of the Debtor's intention to use the Cash Collateral, without exclusion. Durham therefore had the opportunity to file an objection, attend the Preliminary Hearing to present argument or evidence, or to otherwise alert the Debtor of its position relative to the Cash Collateral Motion.

16. Now that the Court has entered the Interim Order approving the Use of Cash Collateral, Durham seeks to strike the Order based upon facts that have always been available to it and arguments that could have been made at or prior to the Preliminary Hearing.

17. The law is clear that Rule 9023 precludes a movant from raising new legal arguments or asserting additional facts in a motion for reconsideration which could have been but were not raised at the prior hearing. *In re Hillis Motors, Inc.*, 120 B.R. 556, 557 (Bankr. S.D. Hawaii 1990); *In re Watson*, 102 B.R. 112, 113 (Bankr. S.D. Ohio).

18. In its Motion for Reconsideration, Durham therefore attempts to do what is forbidden in the Context of a Motion for Reconsideration – make arguments that were previously available to it but not raised in an Objection or presented in argument or evidence at the Preliminary Hearing.

19. The Debtor also fails to meet the standard for reconsideration and its Motion for Reconsideration must therefore be denied.

### C. The Controlling Standard of Law.

20. Although not expressly stated, Durham seeks to have the Court reconsider its February 24, 2015 Order pursuant to Rule 9023 of the Federal Rules of Bankruptcy Procedure ("Rule 9023"). As set forth below, Durham is unable to meet the standard of Rule 9023.

21. Federal Rule 59(e), made applicable to this proceeding by Bankruptcy Rule 9023, allows a judgment to be altered or amended if the moving party can show the court has "obviously misapprehended a party's position or the facts or applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence." *Staiano v. Schlittler,* 324 B.R. 561, 563 (Bankr.M.D.Pa.2005) (citations omitted).

22. Courts may also reconsider an issue "when there has been an intervening change in the controlling law . . . or when there is a need to correct a clear error or prevent manifest injustice." *NL Industries, Inc. v. Commercial Union Insurance Co.,* 65 F.3d 314, 324 (3d Cir.1995).

23. Deconstructing these condensed statements into separate elements demonstrates that acceptable grounds for reconsideration are limited to: (1) an obvious misapprehension by the court of a party's position, or a clear error of the facts or the law; (2) newly discovered evidence that could not have been obtained through the exercise of due diligence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *In re Split Vein Coal Co. Inc.*, 1:03-BK-02974 MDF, 2010 WL 3168115 (Bankr. M.D. Pa. Aug. 11, 2010).

### D. Application of the Standard.

#### 1. Misapprehension of Party Position/Clear Error of Fact or Law.

24. Establishing a "clear error of law or fact" requires an error that is "plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible

evidence in the record." *In re Titus*, 479 B.R. 362, 368 (Bankr. W.D. Pa., 2012) (citing *In re Oak Park Calabasas Condominium Ass'n,* 302 B.R. 682, 683 (Bankr.C.D.Cal., 2003) (quoting *Black's Law Dictionary* (7th Ed. 1999)).

25. Durham does not dispute that it had notice of the Cash Collateral Motion and of Debtor's request for the use of the Cash Collateral, without exclusion. *See* Paragraphs 2 through 6 above. It is further given that Durham did not file a written objection with the Court or advance any theory of law opposing the Debtor's proposed use of the Cash Collateral. Finally, Durham did not contact the Debtor or appear at the hearing to present argument or to introduce evidence into the record opposing the proposed use of the Cash Collateral.

26. Therefore, since Durham neither advanced a theory of law or produced credible evidence at or prior to the Preliminary Hearing in opposition of the Debtor's proposed use of Cash Collateral, Durham can not now argue that this Court's February 24, 2015 Order contains an "obvious misapprehension by the court of a party's position, or a clear error of the facts or the law that is "plain and indisputable, and that amounts to a complete disregard of of the controlling law or the credible evidence in the record."

**2. No Newly Discovered Evidence Not Previously Discoverable.**

27. As set forth above, Durham admits to having received notice and opportunity to object to the Cash Collateral Motion, which clearly requests use of the Cash Collateral without restriction or exclusion of any accounts. Notwithstanding the Debtor's clear position regarding the use of Cash Collateral, Durham elected not to object to the Cash Collateral Motion or to appear at the Preliminary Hearing. Instead, Durham took no action and failed to raise any legal arguments or assert any facts to support its theory that certain portions of the Cash Collateral

should be excluded from the bankruptcy estate and therefore unavailable to the Debtor as Cash Collateral.

28. The law is clear that Rule 9023 precludes the movant from raising new legal arguments or asserting additional facts in a motion for reconsideration which could have been but were not raised at the prior hearing. *In re Hillis Motors, Inc.*, 120 B.R. 556, 557 (Bankr. S.D. Hawaii, 1990); *In re Watson*, 102 B.R. 112, 113 (Bankr. S.D., Ohio).

29. In its Motion for Reconsideration, Durham therefore attempts to do what is forbidden under Rule 9023 – make arguments that were previously available to it but not raised in its motion, briefs or at the Final Hearing. The Motion should thus be denied.

### 3. No Intervening Change in Controlling Law.

30. Durham does not argue or assert a change in the controlling law as a basis for reconsideration.

### 4. No Manifest Injustice.

31. One Pennsylvania Bankruptcy has recently stated that "manifestly unjust" as it pertains to a Rule 59(e) means "an error in the trial court that is direct, obvious, and observable . . . to the point of being indisputable. In order for a court to reconsider a decision due to "manifest injustice," the record presented must be so patently unfair and tainted that the error is manifestly clear to all who view it. Id. at 367-78 (citing *In re Green Goblin, Inc.,* 2012 WL 1971143, *1 (Bankr.E.D.Pa. May 31, 2012) (quoting *In re Roemmele,* 466 B.R. 706 (Bankr.E.D.Pa., 2012)).

32. Durham was provided with an opportunity to object to the Cash Collateral Motion and to argue its position at the Preliminary Hearing. Alternatively, Durham could have advised the Debtor of its position on February 23, 2015 during either of its telephone conferences with counsel for the Debtor. Instead, it assumed that the Debtor was aware of its position and that the

7

Interim Order consented to by the Beneficial and Citibank would somehow incorporate same without any participation by Durham. By making this assumption, Durham assumed the risk that its assumption was incorrect.

33. Clearly, the facts and circumstances of this matter as set forth above do not establish an error that is "direct, obvious, and observable . . . to the point of being indisputable." To the contrary, and as more fully set forth below, even assuming that Durham had taken reasonable steps to advance an argument or to introduce evidence against the proposed use of Cash Collateral, such argument or evidence would not have succeeded in view of the applicable standards of law.

34. For all the foregoing reasons, Durham's Motion for Reconsideration should be denied because it fails to establish: (1) an obvious misapprehension by the court of a party's position, or a clear error of the facts or the law; (2) newly discovered evidence that could not have been obtained through the exercise of due diligence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.

### E. Additional Considerations

35. In addition to the foregoing, in ruling on a motion under Rule 9023, a court must also consider (i) whether the movant has a meritorious defense on the merits, (ii) the prejudice to the non-moving party, and (iii) and whether the order was entered as a result of culpable conduct of the moving party. *In re Brasby*, 109 B.R. 113, 125 (Bankr. E.D. Pa., 1990) (citing *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 122 (3d Cir., 1983); *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir., 1982)).

### 1. No Meritorious Defense

36. Durham appears to be arguing that the Debtor can not seek to recover any interest in six (6) specific invoices (the "Invoices") because they are not property of the bankruptcy estate. According to Durham, the Invoices are not part of the estate because they were sold to Durham pursuant to a July 6, 2012 "Nonrecourse Receivables Purchase Contract and Security Agreement" (the "Durham Agreement"). For the reasons that follow, this argument fails when subjected to scrutiny under the law.

37. First, it is well settled that "[c]ourts will not be controlled by the nomenclature the parties apply to their relationship." *In re De-Pen Line, Inc.*, 215 B.R. 947 (Bankr.E.D.Pa., 1997) quoting *Kelter v. American Bankers' Finance Co.*, 306 483, 492, 160 A. 127, 130 (1932). It has also be said that "[n]either the form of a contract nor the name given it by the parties controls its interpretation. In determining the real character of a contract, courts will always look to its purpose, rather than to the name given it by the parties." *Id. quoting Smith-Faris Co. V. Jameson Memorial Hospital Ass'n*, 313 Pa. 254, 260, 169 233, 235 (1933); *Accord*, *Capozzoli V. Stone & Webster Engineering Corp.*, 352 Pa. 183, 186-87, 42 A.2d 524, 525 (1945). *See also In re Joseph Kanner Hat Co.*, 482 F.2d 937, 940 (2d Cir., 1973) ("courts will determine the true nature of a security transaction, and will not be prevented from exercising their function of judicial review by the form of words the parties my have chosen").

38. Second, the Debtor retains an interest in the Invoices because of the recourse rights granted to Durham under the Durham Agreement. When a buyer of accounts receivable holds substantial recourse against the seller, courts have routinely held the transaction to be a financing arrangement and not a sale. *In re Siskey Hauling Co., Inc.*, 456 B.R. 597, 607 (Bankr.

N.D.Ga., 2001) *citing Major's Furniture Mart, Inc. v. Castle Credit Corp., Inc.*, 602 F.2d 538, 544-45 (3d Cir., 1979); *Lange v. Inova Capital Funding, LLC (In re Qualia Clinical Serv., Inc.)*, 441 B.R. 325, 329-31 (8th Cir. BAP, 2011) (finding an invoice purchase agreement that shifted all risk of non-collection to the seller to be a "disguised loan rather than a true sale."); *In re De-Pen Line, Inc.*, 215 B.R. 947, 951 (Bankr. E.D.Pa., 1997) (finding an invoice purchase agreement merely created a security interest in favor of the buyer because the "risks which are characteristic of a true sale" were not accepted by the buyer); *Wiers Farm, Inc. v. Waverly Farms, Inc*, No 8:09-cv-1742-T-30TBM, 2011 WL 1296867 (M.D.Fla. Mar. 31, 2011) (factoring agreement did not provide for true purchase of accounts receivable where factor "did not agree to assume the risk of nonpayments on all accounts"); *Nickey Gregory Co., LLC v. AgriCap, LLC*, 597 F.3d 591, 601-602 (4th Cir., 2010).

39. In *Major's*, the Third Circuit Court of Appeals ruled that a sale of accounts receivable was a loan when none of the risks associate with a true sale were present. *Major's*, 602 F.2d at 546-47. There, the seller bore the risk because it had to warrant the credit worthiness of the account debtors, the buyer held a reserve from the purchase price to protect it against nonpaying accounts, and the seller was required to repurchase delinquent accounts. *Id*.

40. As in *Major's*,[3] the Durham Agreement in this case lacks the allocation of risk on a buyer that is typically associate with a true sale. For example, Durham can compel the Debtor

---

[3] *See also In re Siskey Hauling Co., Inc*., 456 B.R. 597, 607 (Bankr. N.D.Ga., 2001); *Lange v. Inova Capital Funding, LLC (In re Qualia Clinical Serv., Inc.)*, 441 B.R. 325, 329-31 (8th Cir. BAP, 2011) (finding an invoice purchase agreement that shifted all risk of non-collection to the seller to be a "disguised loan rather than a true sale."); *In re De-Pen Line, Inc.*, 215 B.R. 947, 951 (Bankr. E.D.Pa., 1997) (finding an invoice purchase agreement merely created a security interest in favor of the buyer because the "risks which are characteristic of a true sale" were not accepted by the buyer); *Wiers Farm, Inc. v. Waverly Farms, Inc*, No 8:09-cv-1742-T-30TBM, 2011 WL 1296867 (M.D.Fla. Mar. 31, 2011) (Factoring agreement did not provide for true purchase of accounts receivable where factor "did not agree to assume the risk of nonpayments on all accounts"); *Nickey Gregory Co., LLC v. AgriCap, LLC*, 597 F.3d 591 (4th Cir., 2010) (factoring agreement did not provide for true purchase of accounts receivable because the agreement "transferred the risk of the non collection of the accounts receivable to [seller]").

to immediately "accept back (repurchase) from Durham any Account subject to a dispute between [a] Customer and [Debtor] of any kind whatsoever." *See* Exhibit B to Durham's Motion for Reconsideration, Paragraph 4.10.

41. Also, to protect against non-payment, Durham holds a "reserve account equal to twenty five percent (25%) of the face amount of each Account purchased" under the Durham Agreement. *See* Exhibit B to Durham's Motion for Reconsideration, Paragraph 4.8.

42. Further, Durham can "require that [Debtor] repurchase [Accounts], by payment of the then unpaid Face Amount thereof together with any unpaid fees relating to the Purchased Account on demand or, at Durham's option by Durham's charge to the Reserve Account." *See* Exhibit B to Durham's Motion for Reconsideration, Paragraph 6.4.

43. Just like the seller in *Major's*, the Debtor was also required to warrant the credit worthiness of the account debtors. *See* Exhibit B to Durham's Motion for Reconsideration, Paragraph 6.4 ("To the best of [Debtor's] knowledge and based on [Debtor's] reasonable business practices, each Customer is solvent"). Additional terms of the agreement and the course of dealing between the parties removes all doubt as to the transfer of all risk of collection to the Debtor.

44. Similar to the Third Circuit Curt of Appeals in *Major's*, this Court should conclude that Durham's recourse against the Debtor effectively transfers the risk of non-collection to the Debtor. The transaction involving the Invoices should therefore be construed as a loan subject to a security interest, and not a sale. As such, and for the reasons more fully set forth by the Debtor in its Cash Collateral Motion, herein incorporated by reference as if more fully set forth, the Invoices remain part of the estate and subject to use by the Debtor as Cash Collateral.

45. In view of all of the foregoing, even if Durham had taken reasonable steps to advance an argument or to introduce evidence against the proposed use of Cash Collateral at the Preliminary Hearing, such argument or evidence would not have succeeded in view of the applicable standards of law.

### 2. Prejudice to the Debtor

46. The Debtor will certainly be prejudiced if the Motion for Reconsideration is granted. The value of the Invoices will likely be collectable within the first 75 days of the case, which is a critical time for the Debtor. Therefore, the Debtor will be prejudiced if Durham's Motion for Reconsideration is granted. Though the Debtor can continue to operate as a debtor-in-possession without collecting the Invoices, such operations will be diminished.

47. By contrast, if the Debtor is allowed to collect the Invoices and use the proceeds as Cash Collateral, Durham will not be prejudiced for the reasons more fully set forth in its Cash Collateral Motion which is herein incorporated by reference as if more fully set forth.

### 3. Culpable Conduct of the Moving Party

48. As established by the facts, the Docket and its contents, and the record from the Preliminary Hearing, Durham was provided with numerous opportunities to announce its position regarding the Invoices. Durham elected not to do so.

49. To the extent that Durham believed that the Invoices were not property of the estate and should thus not be available for the Debtor to use as Cash Collateral, then Durham should have filed an objection, appeared at the Preliminary Hearing or simply advised the Debtor of its position by telephone, email or otherwise.

50. A motion for reconsideration is not the proper place for the Debtor to raise for the first time an argument that it could have made before the Court entered the Order. *See In re Split*

*Vein Coal Co. Inc.*, 2010 WL 3168115 *1 (Bankr. M.D. Pa. Aug. 11, 2010) (denying motion for reconsideration and noting that "raising, for the first time, a new issue of law or theory of the case that could have been raised" earlier is not grounds for reconsideration).

### F. Conclusion

51. "[T]he reconsideration of a judgment is an extraordinary remedy, and such motions should be granted sparingly." *D'Angio v. Borough of Nescopeck*, 56 F.Supp.2d 502, 504 (M.D. Pa. 1999). The case law is clear that reconsideration for "clear error of law" may only be found where the movant meets "very high hurdle" of demonstrating "manifest injustice" and establishing that such error "amounts to a complete disregard of the controlling law or the credible evidence in the record." *In re Titus*, 479 B.R. 632, 368 (Bankr. W.D. Pa. 2012) (denying motion for reconsideration).

52. Durham has failed to clear the hurdle. The Court did not completely disregard the controlling law or the evidence or commit a clear error of law. The has been no manifest injustice. Durham is simply attempting to make the arguments it failed to timely raise at the Preliminary Hearing. Doing so is an effort by Durham to have the Court completely disregard the controlling law with respect to Rule 9023. Moreover, and for the reasons set forth above, such arguments would not prevailed at the Preliminary Hearing even if they had been timely raised.

53. The purpose of Rule 9023 is to correct errors, not merely give litigants a second opportunity to make their case. The Court must deny the Reconsideration Motion because it fails to meet the standards of Rule 9023.

WHEREFORE, the Debtor respectfully request that this Court enter the attached proposed Order denying Durham's Motion for Reconsideration and granting such other further relief as may be just and proper.

Respectfully submitted,

METTE, EVANS & WOODSIDE

Date: March 2, 2015            By: */s/Henry W. Van Eck*
Henry W. Van Eck, Esquire
3401 North Front Street
Harrisburg, PA 17110
(717) 232-5000

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 11 |
| DRYDEN ADVISORY GROUP, LLC, | : | |
| Debtor | : | CASE NO. 1:15-BK-00545-MDF |
| | : | |
| DURHAM COMMERCIAL CAPITAL CORP. | : | |
| Movant | : | |
| v. | : | |
| | : | |
| DRYDEN ADVISORY GROUP, LLC, | : | |
| Objecting Party | : | |

## CERTIFICATE OF SERVICE

I, Henry W. Van Eck, Esquire, attorney for Debtor, hereby certify that a true and correct copy of the attached **Objection to Motion for Reconsideration** in the above matter was served electronically upon the following parties on the date set forth below:

*Asst. U.S. Trustee*
United States Trustee
228 Walnut Street, Suite 1190
Harrisburg, PA 17101
**Via ECF**

Beneficial Mutual Savings Bank
**c/o Rosetta B. Packer, Esquire**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
**Via ECF**

Citibank, N.A.
**c/o Daniel J. Carrigan, Esquire**
901 K Street NW
Washington, D.C. 20001
**Via ECF**

Durham Commercial Capital Corp.
c/o **Deirdre Marie Richards**
1608 Walnut Street, Suite 703
Philadelphia, PA 19103
**Via ECF**

METTE, EVANS & WOODSIDE

Date: March 2, 2015      By: */s/Henry W. Van Eck*
                                                     Henry W. Van Eck