UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 11 |
| **DRYDEN ADVISORY GROUP, LLC** | * | |
|     Debtor-in-Possession | * | |
| | * | CASE NO. 1:15-bk-00545MDF |
| **DURHAM COMMERCIAL** | * | |
| **CAPITAL CORP.,** | * | |
|     Movant | * | |
| | * | |
|     v. | * | |
| | * | |
| **DRYDEN ADVISORY GROUP, LLC,** | * | |
|     Respondents | * | |

## OPINION

Before me is the Motion of Durham Commercial Capital Corp. ("Durham") for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)(A) (the "Motion") and the Objections of Dryden Advisory Group, LLC ("Dryden"), Beneficial Mutual Savings Bank ("Beneficial"), and Citibank, N.A. ("Citibank").[1]

### I. BACKGROUND

In my July 29, 2015 Opinion, I ruled that a factoring agreement ("the Amended Factoring Agreement") entered into between Dryden and Durham before Dryden filed its Chapter 11 petition was a true sale of certain accounts receivable. Previously, I had authorized Dryden to use cash collateral, unaware that Durham, which held an interest in some accounts, had not been given notice of Dryden's motion. When the final cash collateral order was entered, I reserved judgment on the ownership of the disputed accounts. Following an evidentiary hearing, I held

---

[1] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core, non-*Stern* proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B). This Opinion constitutes findings of fact and conclusions of law made under Fed. R. Bankr. P. 7052, which is applicable to contested matters pursuant to Fed. R. Bank. P. 9014.

that certain factored accounts collected by Dryden post-petition were not property of the estate. Beneficial has repeatedly asserted that, other than the two accounts it agreed could be factored, all factored accounts sold to Durham are subject to its prior liens. Citibank argues that it has a first lien in all accounts, that its lien was subordinated to Beneficial, but that its interest remains superior to that of Durham. All parties agree that I do not have jurisdiction to decide the priority of the various interests in the accounts sold to Durham pre-petition.

On September 2, 2015, Durham filed the Motion in which it argued that the receivables it purchased pre-petition that Dryden diverted for its own use after the petition was filed should be allowed and paid as an administrative expense under 11 U.S.C. § 503(b)(1)(A). It is undisputed that after Dryden filed its petition, it collected $115,547.11 in accounts that had been sold to Durham.

Dryden would not have "survived" without the use of its accounts, Durham argues. Thus, Durham should be granted an administrative claim for their value.[2] Dryden, Beneficial, and Citibank have objected to the Motion. For the reasons set forth below, the Motion will be denied.

## II. DISCUSSION

*A. Administrative priority under § 503(b)(1)(A)*

Section 503(b)(1)(A) provides that administrative expenses may be allowed for "actual, necessary expenses of preserving the estate. . . ." 11 U.S.C. § 503(b)(1)(A). To be granted administrative priority, a claim "'must arise from a [post-petition] transaction with the debtor-in-

---

[2]Durham requested approval of an administrative claim in the amount of $182,484.06, the amount of the pre-petition amounts collected, rather than the amount of $115,547.11, the post-petition amount collected. If I were to accept the legal argument advanced in the Motion, Durham would be entitled to an administrative claim of $115,547.11.

2

possession' and the expense 'must be beneficial to the debtor-in-possession in the operation of the business.'" *In re Marcal Paper Mills, Inc.* 650 F.3d 311, 314-15 (3d Cir. 2011) (quoting *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 532-33 (3d Cir. 1999)). The party requesting administrative priority of its claim has the burden of proving its claim is entitled to such treatment. *Id.* The purpose of granting administrative priority to a claim is to "facilitate the rehabilitation of insolvent businesses by encouraging third parties to provide those businesses with necessary goods and services." *In re United Trucking Serv., Inc.,* 851 F.2d 159, 161 (6th Cir. 1988) (citations omitted).

To justify its entitlement to administrative expense status, a claimant first must demonstrate that it provided consideration to the debtor post-petition. *Marcal* , 650 F.3d at 314-15; *Bakery, Confect., Tobacco Workers and Grain Millers Int'l Union v. Hostess Brands, Inc. (In re Hostess Brands, Inc.),* 499 B.R. 406, 411 (S.D.N.Y. 2013) ("[T]here must be a post-petition transaction between the claimant and the debtor-in-possession and the consideration supporting the right to payment must have been both supplied to and beneficial to the debtor-in-possession in the operation of its business post-petition.") (citing *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986)).

Durham argues that under the Interim Cash Collateral Order, Dryden was authorized to use accounts receivable that Durham had purchased from Dryden before the bankruptcy filing. Durham asserts that Dryden could not have continued to operate without the cash flow from these accounts. Durham, however, fails to describe a post-petition transaction between itself and Dryden or indicate what post-petition consideration was provided by Durham to Dryden. Durham and Dryden entered into the Amended Factoring Agreement pre-petition and the accounts were

3

sold pre-petition. Only collection occurred post-petition under the agreement. Therefore, Durham has failed to establish the existence of a post-petition transaction necessary to demonstrate its entitlement to payment as an administrative expense under the terms of the Amended Factoring Agreement.

### B. Administrative priority based on conversion

Durham also argues that because some of the accounts receivable used in Dryden's operations post-petition had been sold to Durham, Dryden injured Durham by converting its property when it collected the accounts. Claims arising out of a debtor's commission of a tort during the case may be treated as "actual and necessary" administrative expenses. *In re Hayes Lemmerz Int'l, Inc.,* 340 B.R. 461, 480 (Bankr. D. Del. 2006) (citing *Reading Co. v. Brown*, 391 U.S. 471, 482, 88 S. Ct. 759 (1968)) (holding that damages arising from a tort committed post-petition may be afforded administrative expense status). "[F]airness may call for the allowance of post-petition tort claims as administrative expenses if those claims arise from actions related to the preservation of a debtor's estate despite having no discernable benefit to the estate." *In re Phila. Newspapers, LLC*, 690 F.3d 161, 172 (3d Cir. 1999) (citing *Reading*, 391 U.S. at 477).

Here, Durham argues that Dryden converted its property when it collected accounts sold to Durham. Under Pennsylvania law[3], a conversion is "the deprivation of another's right of

---

[3]Although the Amended Factoring Agreement is governed by New York law, the conversion claim is governed by the law of the state with the most significant relationship to the occurrence and the parties. Restatement (Second) of Conflict of Laws § 145. I find that the law of Pennsylvania should be applied. But even if I were to apply New York law, no conflicts of law issue emerges. Under New York law, "[a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. N.Y. Organ Donor Network, Inc*., 860 N.E.2d 713, 717 (N.Y. 2006). The standards of New York and Pennsylvania, while phrased differently, are substantively the same.

4

Case 1:15-bk-00545-RNO    Doc 292    Filed 12/07/15    Entered 12/07/15 15:00:37    Desc
Main Document    Page 4 of 7

property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification." *Universal Premium Acceptance Corp. v. York Bank & Trust Co.*, 69 F.3d 695, 704 (3d Cir. 1995); *see also McKeeman v. Corestates Bank, N.A.,* 751 A.2d 655, 659 (Pa. Super. 2000) (*quoting Stevenson v. Econ. Bank of Ambridge,* 413 Pa. 442, 451, 197 A.2d 721 (1964)). Thus, to prove that conversion occurred, Durham must prove that Dryden interfered with Durham's use of accounts receivable purchased under the Amended Factoring Agreement.

Durham relies on *In re Enron Corp.,* 2003 WL 1562201 (Bankr. S.D.N.Y. 2003) to support its argument that its claim is entitled to administrative priority based on conversion. The *Enron* court held that a claim based on a post-petition conversion of property by the debtor was entitled to administrative priority. *Id.* at *9. In *Enron*, the plaintiff stored natural gasoline and ethane on the debtor's premises post-petition under the terms of a pre-petition contract. When the plaintiff demanded the return of its property, the debtor could not produce it. The court held that the defendant was negligent in handling the bailment of the plaintiff's property and thus, the plaintiff's claim was entitled to an administrative priority. *Id*.

While the *Enron* court found there was a negligent tort involving a bailment, not surprisingly, similar reasoning has been applied in the context of an intentional tort. In *Hayes Lemmerz,* the bankruptcy court granted a request for administrative expense status to a lessor for damages suffered when the debtor stripped parts from leased machinery post-petition to repair its own equipment. *Id.* at 480.

In both the *Enron* and the *Hayes Lemmerz* cases, the bankruptcy courts granted an administrative expense claim finding that "if a debtor-in-possession could induce third parties to

5

transact business with it and remain immune from liability for torts committed against them during the period the debtor continued to operate, it would discourage those parties from transacting business with the debtor and hinder the reorganization effort." *Enron,* 2003 WL 1562201 at *8. Principles of fairness dictate that creditors who are harmed by a tort committed by the debtor post-petition should be paid before creditors who benefitted from the debtor's wrongful actions. *Id.*

The debtor/creditor relationship in the present case, however, is more complex than the relationships in *Enron* and in *Hayes Lemmerz.* In *Enron,* the bailee converted the property of the bailor. In *Hayes Lemmerz,* the lessee converted the property of the lessor. In neither case did third parties assert an interest in the converted property. In the within case, if the accounts sold to Durham were not subject to prior liens, it might be appropriate to grant an administrative claim to Durham for accounts diverted post-petition by Dryden for its use. This course of action is not possible, however, when the issue of whether these accounts are subject to the liens of Citibank and Beneficial remains unresolved.

Because the issue of whether a claim should be provided with administrative expense status is a question of fairness, it is impossible for me to decide this issue at this juncture. As the parties opposing the motion have observed, not only is it possible that Durham's rights in the accounts it purchased are subject to the rights of either or both Beneficial and Citibank, but any payment of an administrative expense claim would necessarily have to be made out of the banks' cash collateral because no unencumbered funds are available.

I cannot compel Dryden to satisfy Durham's claim if that claim can only be paid from the proceeds of the secured collateral of Beneficial and Citibank. *Hartford Underwriters Ins. Co. v.*

Case 1:15-bk-00545-RNO    Doc 292    Filed 12/07/15    Entered 12/07/15 15:00:37    Desc
Main Document    Page 6 of 7

*Union Planters Bank, N.A.,* 530 U.S. 1, 5, 120 S.Ct. 1942, 1946 (2000) ("Administrative expenses . . . do not have priority over secured claims . . . and because respondent held a security interest in essentially all of the estate's assets, there were no unencumbered funds available to pay even administrative claimants."); *Old W. Annuity & Life Ins. Co. v. Apollo Grp.,* 605 F.3d 856, 865 (11th Cir. 2010) (holding that a secured creditor generally is entitled to have its collateral first applied to satisfy its claim).

### III. CONCLUSION

For the reasons set forth above, the Motion will be denied. An Order consistent with this Opinion will be entered.

By the Court,

_____
Mary D. France
Chief Bankruptcy Judge

Date: December 7, 2015